FILED
COURT OF APPEALS
DIVISION II

2013 JUL 16 AM 8: 44

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41903-3-II |
| Respondent, | |
| v. | |
| RHONDA RENEE GOUDIE, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Rhonda Goudie appeals her two theft convictions for collecting unearned rent payments from a resident in her adult family home. She argues that (1) finding of fact 18 is not supported by substantial evidence, (2) the trial court's findings of fact and conclusions of law are inadequate under CrR 6.1(d), and (3) the evidence is insufficient to support both convictions. We remanded to the trial court to enter findings of fact and conclusions of law in compliance with CrR 6.1(d). We hold that the revised findings of fact and conclusions of law comply with CrR 6.1(d) and that finding of fact 18 is now supported by substantial evidence. Further, the evidence is sufficient to support both theft convictions. We affirm.

## FACTS

Rhonda Goudie owned and operated an adult family home in Port Angeles, Washington. She handled the home's finances herself, but admitted that her accounting practices were poor. She never looked at her bank statements and never attempted to balance her checkbook, but she would occasionally call the bank's toll free number to check her account balance. She often transferred funds between her US Bank personal account and her Bank of America business account.

Jeannette DeWater, a certified nursing assistant, worked at the home and served as the manager off and on throughout her employment. Her duties included occasionally collecting rent from the residents. She would leave the rent checks on the counter for Goudie, who would endorse them without looking at the front. Goudie sometimes used a stamp to endorse checks that she deposited in her business account. DeWater testified that she never stamped or signed any of the checks. DeWater would often deposit the checks at Goudie's request, although the two disagreed as to who would fill out the deposit slip on those occasions. DeWater also went shopping for groceries and supplies for the home. She had access to the home's debit card for that purpose but testified that she never used it because she did not know the personal identification number (PIN).

Truman (Tom) Curry was a resident in the home. He suffered from dementia, which caused him to be slightly confused or forgetful at times. He was not close with his family and refused help with his financial affairs. Curry's rent was $3,500 per month, and he usually paid in the middle of the month. Between January 1, 2009, and May 20, 2009, Curry wrote eleven rent checks to Goudie. Curry was deceased at the time of this trial.

In April or May 2009, Goudie received a call from the bank informing her that Curry's rent check had bounced. Goudie told DeWater about the bounced check. DeWater offered to call the bank, but Goudie told her not to worry about it and that she, Goudie, would take care of it. DeWater and Curry called the bank anyway. The bank said that Curry had made three extra rent payments. Goudie testified that she then entered an agreement with Curry to reduce his rent to $2,000 per month until she paid him back for the extra rent.

On a separate occasion, Curry asked another employee, Julie Wilson,[1] why his bank statement showed three checks to Goudie in one month. Wilson asked Goudie about the overpayment, and Goudie replied that Curry had paid two months in advance and that "he knew it." Report of Proceedings (Sept. 29, 2010) at 60.

On June 3, 2009, the Department of Social and Health Services (DSHS) received an anonymous complaint alleging that the home was financially exploiting Curry. On June 8, complaint investigator Candace Corey made an unannounced visit to the home. Goudie did not mention Curry's overpayment during the visit, and Corey reviewed Curry's file and found no evidence of overpayment or of an agreement for Curry to pay in advance or pay only $2,000 for a set period. However, Goudie called Corey the next day to tell her that Curry had overpaid his rent by $10,500. Corey and her supervisor returned to the home a few days later to revoke Goudie's license and remove the residents. The DSHS investigators told Goudie that Curry had written six extra rent checks and overpaid by $21,000. Goudie appeared surprised at the amount and told the investigators that she had no idea. Goudie paid Curry back the full $21,000 with help from her family. The State charged Goudie on June 29, 2009, with six counts of theft and one count of money laundering.

The trial court found Goudie guilty of two counts of first degree theft: one for the February 20 check (no. 342, count 3) and one for the April 14 check (no. 245, count 5). It also found that Goudie was under financial stress at the time both checks were deposited—her bank received two notices of garnishment for her account on February 24 and there was more than $1,600 of travel expenses on her account on April 16. The trial court sentenced Goudie to 90 days of electronic home monitoring and 30 days of community service. Goudie appeals.

---

[1] Wilson is also known as Julie or Lisa DeWater.

3

This case was originally set for consideration on October 23, 2012. We determined that the findings of fact and conclusions of law did not comply with CrR 6.1(d). Accordingly, we remanded to the trial court to revise the findings and conclusions. The trial court entered revised findings of fact and conclusions of law on December 21, 2012.

ANALYSIS

I.    FINDING OF FACT 18

Goudie originally argued that substantial evidence does not support finding of fact 18. The trial court revised finding of fact 18 on remand, and it now states, "At some point before early June 2009, both the defendant and Ms. Dewater learned that one of Mr. Curry's rent checks had bounced. Ms. Dewater offered to call the bank to inquire." Spindle (Revised FF/CL at 3). Goudie acknowledges that the revised finding of fact is now consistent with the testimony at trial—that Goudie learned from the bank manager that Curry's check had bounced and that she then told DeWater, who offered to call the bank We agree.

II.    FINDINGS AND CONCLUSIONS

Goudie also argued that the trial court's findings of fact and conclusions of law were inadequate under CrR 6.1(d) because they failed to state that each element of theft had been satisfied. We agreed and remanded to the trial court to enter revised findings of fact and conclusions of law. We hold that the revised findings of fact and conclusions of law comply with CrR 6.1(d).

CrR 6.1(d) requires the trial court to enter findings of fact and conclusions of law after bench trials. The findings of fact and conclusions of law must separately address each element of the crime and set out the factual basis for each conclusion of law. *State v. Banks*, 149 Wn.2d

4

38, 43, 65 P.3d 1198 (2003). Additionally, the findings of fact must specifically state that an element has been met. *Banks*, 149 Wn.2d at 43.

A person commits first degree theft when she (1) wrongfully obtains or exerts unauthorized control over the property of another (2) with intent to deprive that person of such property, and (3) the value of the property exceeded $1,500. RCW 9A.56.020(1)(a), former RCW 9A.56.030(1)(a) (2007).

The revised conclusions of law 6 and 7 state:

> The defendant is guilty of Count 3 [and Count 5], Theft in the First Degree (Check[s] No[s]. 342 [and 245]). The Court concludes there is proof beyond a reasonable doubt to satisfy all elements of the crime: (1) that on or about the date alleged in the information, the defendant wrongfully obtained or exerted unauthorized control over the property of Mr. Curry; (2) that the property exceeded $1500 in value; (3) that the defendant intended to deprive the other person of the property; and (4) that the acts occurred in the State of Washington.

Spindle (Revised FF/CL at 5). Goudie concedes that the revised conclusions of law address each element of theft and comply with CrR 6.1(d). We agree.

III.    INSUFFICIENT EVIDENCE

Goudie next argues that there is insufficient evidence to support her two theft convictions. Because there is sufficient evidence that Goudie wrongfully obtained the checks with intent to deprive Curry, we disagree.

Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in a light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the

5

trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

There is sufficient evidence to support both theft convictions. First, it is uncontested that Curry overpaid his rent. Although Curry was obligated to pay rent only once a month, the February 20 check was the second rent check he wrote that month and the April 14 check was one of three rent checks he wrote in April. Second, there is evidence that Curry did not authorize these extra payments. When Curry learned from his bank statement that he had written Goudie multiple rent checks in one month, he became concerned and asked Wilson about the extra payments. Third, Goudie was in financial distress at the time both checks were deposited into her accounts. The February 20 check was deposited four days before two garnishments were placed on Goudie's business account. The April 14 check was deposited during the time that significant travel expenses appeared on her account. Additionally, although Goudie had $21,000 of extra funds between her two accounts, her business account balance decreased throughout the year, ending in a negative balance in April and a $1.84 balance in May. Fourth, Goudie attempted to conceal the overpayments. She told DeWater not to worry about contacting Curry's bank regarding his bounced rent check. She failed to inform Corey about the overpayments during Corey's visit, and Corey found no evidence in Curry's file of overpayment or an agreement to pay him back. When Goudie did tell Corey about Curry's overpayments the next day, she said that they amounted to only $10,500—half the actual amount of the overpayments.

Further, there is sufficient evidence that Goudie, not DeWater, was responsible for the theft. While DeWater may have had access to Goudie's Bank of America debit card, she did not know the PIN. The April 14 check was actually signed by Goudie and deposited into her personal account. While the February 20 check was stamped rather than signed, Goudie was the only one who used the stamp and filled out the deposit slips.

Finally, Goudie's argument that the February 20 and April 14 checks were legitimate rent payments is unpersuasive. She points out that the checks were collected in the middle of the month, which is when Curry usually paid rent. However, at the time both checks were deposited, Goudie had already received payment for those months. When Goudie deposited the February 20 check, she had already deposited two checks that indicated they were for February rent and one check that indicated it was for March rent. The DSHS investigator testified that it is against state law for adult family home owners to collect rent in advance, and Goudie testified that she never charged more than one month of rent at a time. Given that Curry had already paid for February (twice) and March and Goudie did not collect rent in advance, her argument that the February 20 check was a valid rent payment is not tenable. Her argument that the April 14 check was a valid payment is also not tenable. By the time Goudie deposited the April 14 check, Curry had already written seven full rent checks in less than four months, including one check written earlier in April. Since Curry had overpaid his rent in recent months and a rent check was already collected from him in April, Goudie's argument that the April 14 check was a valid payment lacks merit.

Affirmed.

7

41903-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Quinn-Brintnall, J.

Worswick, C.J.

8